JOSEF BOZEK,

        Plaintiff,

    v.

BANK OF AMERICA, N.A., PIERCE &
ASSOCIATES, P.C., MCCALLA RAYMER
LIEBERT PIERCE, LLC, WINSTON &
STRAWN, LLP, ELIAZER CALERO, PHIL
SCHROEDER, MATTHEW GRUCA, CODY
COCANIG, PNC BANK, N.A., PNC
MORTGAGE, and GAIL KLEIN,

        Defendants.

No. 17 CV 4672

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Josef Bozek brings this action against eleven defendants for their debt-collection tactics and for their refusal to validate, remove, or correct inaccuracies regarding that debt in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, the Illinois Collection Agency Act, 225 ILCS §§ 425/1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS §§ 505/1 *et seq.* He also includes a claim against all defendants for intentional infliction of emotional distress. Defendants filed four separate motions to dismiss. *See* [16]; [47]; [49]; and [51].[1] Those motions are granted in part, and the complaint is dismissed in its entirety.

---

[1] Bracketed numbers refer to entries on the district court docket.

## I.    Legal Standards

A Rule 12(b)(1) motion challenges jurisdiction in federal court; on such a motion, the plaintiff bears the burden of establishing the elements necessary for jurisdiction. *Scanlan v. Eisenberg*, 669 F.3d 838, 841–42 (7th Cir. 2012). With a Rule 12(b)(1) motion, a court may look beyond the complaint's allegations and consider any evidence that has been submitted on the issue of jurisdiction. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). By contrast, a Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A court may consider allegations in the complaint, documents that are referenced by and central to the complaint, and information that is properly subject to judicial notice.[2] *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

When analyzing a motion under Rule 12(b)(1) or Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Scanlan*, 669 F.3d at 841. The court need not accept legal conclusions or conclusory allegations, however. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

---

[2] Specifically, I rely on state-court litigation documents that defendants submitted. *See* [60-1].

## II.    Background

Bozek refinanced his home loan with National City Bank in 2007. [45] ¶ 17. Almost four years later, Pierce & Associates filed a foreclosure action on behalf of Bank of America against Bozek in the Circuit Court of Cook County. *Id.* ¶ 20. A few months into the foreclosure action, Pierce & Associates recorded the assignment of the mortgage and transferred the interest in Bozek's property from PNC Bank to Bank of America. *Id.* ¶ 21. Several years later, Bozek emailed an attorney at Pierce & Associates named Eliazer Calero, to request an accurate payoff statement before the scheduled sale of Bozek's property. *Id.* ¶¶ 13, 25. Pierce & Associates responded with a $747,237.40 payoff demand. *Id.* ¶ 26. On August 11, 2016, Pierce & Associates completed the sale of Bozek's property. *Id.* ¶ 39. Bank of America purchased the property for $499,500 and a deficiency judgment of $357,053.66 was entered on November 15, 2016. *Id.* ¶¶ 47–48.

Despite Bozek's requests, Pierce & Associates failed to provide an accurate payoff statement; and Pierce & Associates, along with Calero and Phil Schroeder,[3] proceeded with the sale without ever verifying the accuracy of the amount of the debt Bozek owed. *Id.* ¶¶ 49, 55. While Bozek's debt was in dispute, PNC Mortgage reported "derogatory information" in Bozek's credit report with three credit bureaus. *Id.* ¶ 36. Additionally, on March 16, 2017, Bozek received a notice of intent to file a forcible entry and detainer action from an attorney at the firm of McCalla Raymer Liebert Pierce, LLC named Matthew Gruca. *Id.* ¶¶ 15, 44, 53. Gruca and

---

[3] Schroeder was an attorney at Pierce & Associates. [45] ¶ 14.

3

McCalla never validated the debt Bozek owed to Bank of America either. *Id.* ¶ 54. Even though all defendants knew that the debt they were attempting to collect was false or ineligible for collection, they conspired to damage Bozek's reputation for credit worthiness by having PNC Mortgage report a derogatory "tradeline" in all three credit bureaus. *Id.* ¶ 50. These actions harmed Bozek—he lost his opportunity to secure an alternative to the foreclosure sale.[4] *Id.* ¶ 55.

Before this action began, Bozek litigated at least four other state-court actions: (1) a 2010 foreclosure action in the Circuit Court of Cook County; (2) a 2014 suit for declaratory relief, which was consolidated with the 2010 foreclosure action; (3) a petition to the Illinois Supreme Court seeking a supervisory order, and (4) a 2016 suit to quiet title, which was dismissed with prejudice.[5] [60-1] at 1–2. Pierce & Associates, on behalf of Bank of America, brought the foreclosure action against Bozek in the Circuit Court of Cook County. *Id.* at 1–2 n.1. In response to the foreclosure plaintiffs' motion for summary judgment, Bozek made several arguments concerning the mortgage's differences from the Fannie Mae form mortgage, improper notarization on the mortgage, differences in the legal descriptions, standing, a challenge to the affidavit of amounts due and owing,

---

[4] The complaint also states that Bozek sent several debt validation letters to each of the defendants between 2013 and 2017, but that defendants did not respond to these letters. *See id.* ¶¶ 22–24, 27–31, 33–34, 37–38, 40–43, and 45–46.

[5] The quiet title case was also based on allegations that were substantially similar to the foreclosure case—improper filing of the mortgage, ambiguity in the mortgage, void assignments of mortgage, discrepancies in the legal description of the subject property, and discrepancies between the mortgage and the Fannie Mae form mortgage. [60-1] at 6. At the first hearing in that case, Bozek presented a motion for default, but the judge dismissed the case with prejudice, because the foreclosure case was already pending. *Id.* Bozek appealed that final order. *Id.*

challenges to the updated affidavits of military service, and attorney's fees.[6] *Id.* at 2. The court granted the plaintiffs' motion, reformed the mortgage, and entered a judgment of foreclosure. *Id.* at 3.

Bozek filed a motion to vacate the entry of summary judgment, which the court treated as a motion to reconsider. *Id.* That motion also challenged the loss mitigation affidavit and the affidavit of amounts due and owing; and it contained similar merits-based arguments about the failure to send the notice of acceleration, violations of the Truth in Lending Act, lack of notices concerning a change in loan service, improper notarization of the mortgage, lack of notarization on the assignments of mortgage, fraud in the reformation of mortgage, unclean hands, rescission, and a request for a stay. *Id.* The court held that "even if the arguments had been raised during briefing on the Motion for Summary Judgment, they lacked merit and would not have prevented entry of judgment"; thus, the court denied Bozek's motion with prejudice. *Id.* Bozek attempted to appeal this order, but it was not a final judgment. *Id.* At around this time, the declaratory judgment action was consolidated with the foreclosure action.[7] *Id.*

---

[6] Bozek also filed a "Petition to the Court For Criminal Investigation of Defendants As Demanded by 18 U.S. Code § 4." [60-1] at 2. That filing asserts that Pierce & Associates engaged in criminal fraud; it also reiterates arguments regarding the merits of the case—the lack of notarization on the recorded assignments of mortgage, failure to respond to a request for debt validation, failure to tender the original note, concerns regarding the negotiation of the note, and improper notarization of the mortgage. *Id.* at 2–3.

[7] With respect to the declaratory relief case, Bozek sought a judgment holding that the mortgage was void. [60-1] at 5. His complaint in that case raised substantially similar issues to the issues he raised in the foreclosure case—improper recordation of the mortgage, differences between the mortgage and the Fannie Mae uniform instrument, improper notarization of the mortgage, issues with the mortgage's legal description, and violations of the TILA. *Id.* As a defendant in that action, Bank of America filed a motion to dismiss. *Id.*

There was a judicial sale of the property after "significant back-and-forth concerning loss mitigation and emergency motions to stay."[8] *Id.* at 4. The foreclosure plaintiffs moved for an order approving sale, Bozek responded with a "Challenge [to] Subject Matter Jurisdiction," which requested that the court take judicial notice of previously raised legal arguments. *Id.* The court treated that filing as a response to the motion for order approving sale. *Id.* Bozek did not want the court to treat his filing as a response, so he moved for leave to file a response and attached his proposed response. *Id.* In the proposed response, Bozek reiterated arguments about the fraudulent alteration of the note, fraudulent recording of assignments of mortgage, improper recordation of the mortgage, failure to file a PTAX-203 declaration, lack of standing, failure to validate the debt, and Bozek requested that the court dismiss the order approving sale. *Id.* at 4–5. The court granted Bozek's motion for leave, deemed his response timely, reiterated its relevant rulings, explicitly found that the court had subject matter jurisdiction, granted the motion for order approving sale, and granted Bozek's request for an extended stay of the eviction order. *Id.* at 5. Bozek appealed the order approving sale. *Id.*

The court granted the motion in part because the issues presented overlapped with the pending foreclosure case. *Id.* at 6. The declaratory relief case was consolidated with the foreclosure case; and because the court had already resolved many of the issues presented in ruling on the motion for summary judgment and the first motion to reconsider in the foreclosure case, the court dismissed the remainder of the declaratory relief complaint with prejudice, and specifically dismissed the TILA claim with prejudice. *Id.* The court made that order of dismissal final, and Bozek appealed the judgment. *Id.*

[8] On the same day as the judicial sale of the property, Bozek presented the court an "Emergency Motion for Supervisory Order," which requested that such an order be entered against the judge in the foreclosure case and that the sale be stayed. [60-1] at 6. Eventually, the document was presented to the Illinois Supreme Court. *Id.* at 7.

When the stay of eviction was set to expire in a few weeks, Bozek filed a petition to vacate the order granting summary judgment and the order confirming foreclosure sale and entry of deficiency judgment, which the court treated as a motion to reconsider. *Id.* at 5, 8. That motion raised a number of issues, almost all of which, the court noted, "have been addressed before, some on multiple occasions." *Id.* at 9. The court noted that none of the arguments had merit, but that the court would explain "one last time" why the arguments were "moot, meritless, improper, waived, or some combination thereof." *Id.*

In relevant part, the court explained that the original note had been exhibited; that Bozek had failed to present evidence of fraud or forgery concerning the note; no fraud existed in the assignment of mortgage from PNC Bank to Bank of America because counsel can sign an assignment as an agent on behalf of the entity making the assignment. *Id.* at 11–12. The court dismissed Bozek's arguments that the recordation was invalid; the court explained that none of the requirements Bozek identified were relevant, and even if the recordings were improper, the mortgage and assignments would still be binding on the parties, such that the foreclosure plaintiffs could foreclose upon them. *Id.* at 12–13. Since the relevant statute was no longer in effect, Bozek's argument that the foreclosure plaintiffs violated that state statute by failing to send a Grace Period Notice prior to initiating foreclosure proceedings was meritless. *Id.* at 13–14. Additionally, Bozek's argument that the foreclosure plaintiffs violated the terms of the mortgage by failing to send a

Notice of Acceleration prior to initiating foreclosure proceedings was untimely, and therefore, was waived. *Id.* at 14.

Finally, Bozek's argument that the foreclosure plaintiffs and their counsel were unlicensed debt collectors who violated the FDCPA was improperly raised in a motion to reconsider because it was novel to the case. *Id.* at 11. Even if an FDCPA violation had occurred, the court explained that "at most" it would have been grounds for a counterclaim for damages, and that it would not have provided "a complete defense to foreclosure" as Bozek implied. *Id.* at 12. Although Bozek argued that he sought debt validation in May, August, and October of 2016, the court reminded him that the debt did not exist at that point since the mortgage and note merged into the judgment of foreclosure with the summary judgment ruling in October 2015. *Id.* at 11. The judgment of foreclosure fixed the amount by court order at $711,313.46, plus interest accruing, the court explained. *Id.* The debt validation also would not have barred entry of judgment. *Id.* at 12. The court advised Bozek that the issues he raised in the second motion to reconsider "have already been addressed, and ruled upon, multiple times"; accordingly, he was prohibited from filing additional motions, pleadings, or documents with the court. *Id.* at 17. Specifically, on January 13, 2017, the court stated: "This case is over. To the extent [Bozek] disagrees with the Court's rulings, [his] remedy lies on appeal. Further attempts to litigate this case before this Court may result in sanctions." *Id.*

While the foreclosure action was pending, Bozek also filed two other federal cases, not including this action: (1) a 2015 case seeking to remove the foreclosure

case, which was dismissed[9]; and (2) a 2016 federal case seeking rescission of the subject loan, which was dismissed without prejudice. *Id.* at 1–2.

In this action, Bozek's first amended complaint contains six counts. *See* [45]. In Count I, he asserts a violation of the FDCPA against all defendants. In Count II, he asserts a violation of the Illinois Collection Agency Act against Pierce & Associates and McCalla. In Count III, he asserts a violation of the Illinois Consumer Fraud Act against Bank of America, PNC Bank, PNC Mortgage, Pierce & Associates, and McCalla. In Counts IV and V, he asserts violations of the Fair Credit Reporting Act against PNC Mortgage and Bank of America, respectively. In Count VI, he asserts an intentional infliction of emotional distress claim against all defendants. Pierce & Associates, along with McCalla, Calero, Schroeder, and Gruca move to dismiss Bozek's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* [15]–[16]. The motion to dismiss filed by PNC Bank, PNC Mortgage, and Gail Klein[10] takes the same approach. *See* [51]–[52]. Winston & Strawn along with Cody Cocanig[11] bring a Rule 12(b)(6) motion, *see* [47]–[48], and Bank of America does the same, *see* [49]–[50].

---

[9] Five years after the foreclosure case began, Bozek filed a notice of removal, requesting the removal of the foreclosure case to federal court. *Id.* at 7–8. Judge Blakey dismissed that case without prejudice. *Id.*

[10] Gail Klein was an officer at PNC Bank. [45] ¶ 12.

[11] Cody Cocanig was an attorney at Winston & Strawn. [45] ¶ 16.

## III.    Analysis

### A.    Subject-Matter Jurisdiction

Pierce & Associates and PNC move to dismiss this action for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine. [16] at 3; [52] at 4. Federal district courts do not have jurisdiction over cases brought by parties who lost in state court and who seek relief from injuries caused by that prior state-court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923)). The Supreme Court is the only federal court that has jurisdiction to review such claims. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012).

There are two circumstances in which the *Rooker-Feldman* doctrine bars federal cases. In addition to barring a case that seeks to overturn an adverse state-court judgment, the doctrine also bars claims that are "inextricably intertwined" with a state-court judgment—even if the claims were not raised in state court and even if they do not demand review of the state-court judgment on their face. *Id.* A claim is inextricably intertwined with a state-court decision if it alleges that the state-court judgment caused the injury, or if "[it] alleges an independent prior injury that the state court failed to remedy." *Id.* (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999)). If a claim is inextricably intertwined with the state-court judgment, the federal district court must then determine if the plaintiff had a reasonable opportunity to raise the issue in the state-court

proceeding; if not, the *Rooker-Feldman* doctrine does not apply and the federal district court has subject-matter jurisdiction over that claim.[12] *Id.*

Pierce & Associates argue that Bozek's claims are inherently intertwined with the foreclosure action because in this action, Bozek attacks the sufficiency of the evidence in state court, the propriety of the state-court proceedings, and the foreclosure plaintiffs' standing in state court. [16] at 3–4. Bozek could have brought those claims in state court, Pierce argues. *Id.* at 4. Relatedly, PNC argues that Bozek's alleged injuries stem from the validity of the debt, which is inextricably intertwined with the issues presented in the state-court proceedings, because, in order to permit a judgment of foreclosure, sale of the property, and a confirmation of the sale of the property, the state court had to find that there was sufficient proof that Bozek owed a debt related to the property. [52] at 5–6. Since the state court has already determined that the debt is valid, the *Rooker-Feldman* doctrine bars Bozek's claims.

Bozek argues that he did not file this action with the intention of reversing the state-court's order in the foreclosure action. [59] at 2. Instead, he seeks relief from defendants' actions prior to and during the foreclosure action, whereby defendants violated federal rules that govern how to interact with consumers like Bozek. *Id.* at 2, 4. Bozek also argues that the doctrine cannot apply because, (1) he did not have a reasonable opportunity to raise federal proceedings in state court, *id.*

---

[12] *See Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 606–07 (7th Cir. 2008), for a discussion of why the reasonable opportunity exception to the doctrine "is of questionable viability" after *Exxon.*

at 4 (citing *Reyes v. Kenosian & Miele, LLP*, 619 F.Supp.2d 796 (N.D. Cal. 2008)), and (2) the state-court judgment is not final because the case is on appeal.

Both of those arguments fail. As Pierce notes, Bozek's intentions for filing this action are irrelevant. *See* [60] at 4. Instead, the relevant inquiry is whether Bozek "contends that out-of-court events have caused injury that the state judiciary failed to detect and repair." *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015). Here, Bozek's allegations concern defendants' conduct during the foreclosure action— Pierce & Associates proceeded with the sale of his property without verifying the accuracy of the amount owed on the debt; McCalla also never validated the debt Bozek owed; PNC Mortgage reported "derogatory information" about Bozek to three credit bureaus while the debt was in dispute; and all defendants, in a conspiracy to damage his reputation for credit worthiness, attempted to collect a debt from Bozek that they knew was false or ineligible for collection. These claims are inextricably intertwined with the foreclosure action and Bozek had a reasonable opportunity to raise these claims in the foreclosure action because state and federal courts have concurrent jurisdiction over FCRA and FDCPA claims.[13] *See* 15 U.S.C. §§ 1681p, 1692k(d). Moreover, the foreclosure action's six-year lifespan afforded Bozek ample time to bring those issues before the state court.

Under Illinois law, "a judgment ordering the foreclosure of mortgage is not final . . . until the trial court enters an order approving the sale and directing the

---

[13] The Northern District of California case that Bozek relied on to argue otherwise is distinguishable. *See Reyes*, 619 F.Supp.2d 796. The doctrine did not apply to that case because the prevailing state-court party brought that federal case. *Id.*

distribution." *EMC Mortg. Corp. v. Kemp*, 367 Ill.Dec. 474, 476 (2012). Here, the state court entered a judgment for foreclosure and sale on October 28, 2015, [60-1] at 3; subsequently, the court entered an order approving the sale on November 15, 2016, *id.* at 5. Several months later, Bozek filed this action. *See* [1]. Due to the timing and substance of these actions, the *Rooker-Feldman* doctrine applies. Bozek's claims against these defendants are dismissed without prejudice. *Mains v. Citibank, N.A.*, 852 F.3d 669, 678 (7th Cir. 2017). Indeed, all of Bozek's federal claims— whether arising under the FCRA or the FDCPA—relate to harms caused by the foreclosure action. They are all about misconduct surrounding the debt litigated within the foreclosure action and they are intertwined with the injury Bozek suffered within the state-court system. There is no subject-matter jurisdiction over any of those claims. But even if some claims allege injuries independent of the state-court order, the complaint fails on the merits under Rule 12(b)(6).

## B.  *Res Judicata*

*Res judicata* bars an action when the following elements are present: (1) a court of competent jurisdiction rendered a final judgment; (2) there is an identity of parties or their privies; and (3) there is an identity of causes of action. *Nowak v. St. Rita High Sch.*, 197 Ill.2d 381, 389 (2001). The first element is satisfied because the state court reached a final judgment on the merits when it entered an order approving the sale of Bozek's property. *See EMC Mortg. Corp.*, 367 Ill.Dec. at 476. Bozek does not dispute that there is an identity of parties or their privies; Pierce &

Associates, on behalf of Bank of America, brought the foreclosure action against Bozek. He only disputes that the third element is met. [59] at 5.

In order to determine if there is an identity of claims, Illinois uses a transactional test, which provides: "the assertion of different kinds or theories of relief still constitutes a single cause of action for purposes of res judicata if a single group of operative facts gives rise to the assertion of relief." *Id.* at 391–92. This element is satisfied here because Bozek's claims arise out of the same set of operative facts—the validation of the debt—in both actions. I disagree with Bozek's argument that the claims in the foreclosure action were "based on enforcing security interest secured by Plaintiff's property to debt collector BOA's," which was distinct from the claims in this action, which were based on compliance with the federal statutes and requirements as they apply to a mortgage lender, financial entities, credit reporting institutions, its successors and representatives. [59] at 5. Those characterizations do not overcome defendants' showing that the two cases arise from the same set of operative facts.

*Res judicata* is an affirmative defense, which defendants should raise in a motion for judgment on the pleadings under Rule 12(c), but Bozek does not complain about the procedural error. The complaint and the state-court litigation documents present all the information I need to rule on the defense. *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010); *see also Mains*, 852 F.3d at 678. If the *Rooker-Feldman* doctrine did not divest this court of jurisdiction, the claims against Pierce & Associates, PNC, and Bank of America would be barred by *res judicata*.

## C.     FDCPA Statute of Limitations

The statute of limitations for an FDCPA claim is one year from the date on which the violation occurred. *See* 15 U.S.C. § 1692k(d). Pierce & Associates and Bank of America argue that Bozek's FDCPA claim is time-barred because he filed this action several years after his first request for validation, [16] at 8; [50] at 3. Bozek argues that his claim relates to a payoff letter to Pierce and McCalla, dated June 21, 2016, and that his claim does not include the 2013 letters that Pierce & Associates referenced in its brief. [59] at 7–8. As such, he concludes that his FDCPA claim is timely. *Id.* at 8. The statutory language does not permit a plaintiff to select his date of violation, though. Since Bozek's complaint references letters he sent in 2013, he cannot ignore those allegations now that he is faced with running afoul of the statute of limitations.

The Seventh Circuit has not decided on which date the violation occurs for FDCPA violations that arise out of a foreclosure action. *Stone v. Wash. Mut. Bank*, 2011 WL 3678838, at *7 (N.D. Ill. 2011) (collecting cases). Several courts in this district have held that the statute of limitations begins to run in such FDCPA cases when the allegedly wrongful litigation began. *Id.* Regardless of whether I chose the defendants' proposed date of violation or the method used by other courts in this district, Bozek's FDCPA claim would be time-barred because he did not file this complaint until several years after both of those dates.

The expiration of a statute of limitations is also an affirmative defense; dismissal on such grounds is appropriate only if "the plaintiff pleads himself out of

court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009). Given the allegations in the complaint and the litigation documents from state court, the FDCPA claims are time-barred.

### D. FDCPA Liability

Pierce & Associates, Winston & Strawn, and PNC argue that Bozek fails to state an FDCPA claim because they are not "debt collectors" under the statute. [16] at 8; [48] at 3–4; [52] at 8. "The FDCPA regulates only the conduct of 'debt collectors.'" *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009). Under the FDCPA, a debt collector is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The complaint states that each of the defendants is a debt collector under the FDCPA. [45] ¶¶ 62–71. These allegations are conclusory. With respect to Calero, Schroeder, and Gruca, the complaint merely states that Bozek sent those individuals and their firms debt validation letters, that they failed to reply, and that they proceeded with the sale of his property (or, in Gruca's and McCalla's case, threatened to file a forcible entry complaint against Bozek) without validating the debt amount. Similarly, the complaint states that Bozek sent debt validation letters to Winston & Strawn and Cocanig, and that they failed to respond.

Bozek argues that attorneys and law firms can be held liable under the FDCPA, and that these attorneys and their firms violated the FDCPA by failing to respond to his debt validation letters, proceeding in their respective actions without validating the debt amount, and participating in the foreclosure litigation. [59] at 8. His initial statement of the law is correct; the Supreme Court has held that the FDCPA applies to lawyers who regularly try to collect debts through litigation. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 593 (2010) (citing *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)). Yet, the complaint does not suggest that these defendants were regularly involved in debt collection. Drawing reasonable inferences in Bozek's favor, though, there is some support for the assertion that Pierce & Associates attempted to collect a debt from Bozek—that firm initiated the foreclosure action against Bozek after he defaulted on a debt he owed to the firm's client, Bank of America. Winston & Strawn, on the other hand, only defended Bank of America against lawsuits that Bozek pursued, *see* [48] at 2; their defense does not constitute an attempt at debt collection here. By the terms of the statute, Winston & Strawn and Cocanig are not debt collectors and cannot be held liable under the FDCPA.[14]

Klein was not a debt collector because the FDCPA's definition of a debt collector "does not include . . . any officer or employee of a creditor while, in the name of the creditor, [she] collect[s] debts for such creditor." 15 U.S.C.

---

[14] I do not reach Winston & Strawn's and Cocanig's arguments that they did not send Bozek an "initial communication" under the FDCPA and that they had no obligation to respond to Bozek's letters. *See* [48] at 5–7 (citing § 1692g(a)–(b), (d)).

§ 1692a(6)(A). Even assuming that Klein sent a dunning letter to Bozek, the statute exempts Klein from liability for the actions she took in furtherance of collecting for her employer, the creditor. Bozek fails to state an FDCPA claim against Klein.

PNC, the originator of the debt, could be considered a debt collector if it used an alias or assumed a name to collect its debts. *See id.* § 1692a(6). Since the complaint alleges that PNC used different aliases in reporting Bozek's credit to three credit reporting agencies, there is support for Bozek's assertion that PNC is a debt collector. The complaint also alleges that PNC sent Bozek dunning letters demanding payment and threatening a foreclosure action. [45] at ¶ 34. This is also enough to support his assertion that PNC is a debt collector, but the complaint is deficient in its allegations concerning PNC's FDCPA liability. Bozek does not identify PNC's initial communication, nor does he establish that his debt validation letters to PNC were timely, such that PNC was statutorily obligated to respond to Bozek's letters. As a result, Bozek's FDCPA claims against PNC fail on the merits.

Pierce & Associates and Bank of America argue that Bozek fails to state an FDCPA claim because he cannot establish that they owed him any obligation under the statute. With respect to debt validation letters, § 1692g(a) requires a debt collector to provide required information, either in its initial debt collection communication or in another written notice sent within five days of the initial communication. If the consumer requests validation of the debt, § 1692g(b) requires a debt collector to either provide the requested validation or to cease its debt-

collecting activities. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

As Pierce & Associates and Bank of America note, Bozek does not identify defendants' initial communications, nor does he allege that his requests for debt validation were made within thirty days of any initial communication by defendants.[15] [16] at 7–8; [50] at 4–5; *see also* 15 U.S.C. § 1692g. In his response brief, Bozek identifies a June 21, 2016 payoff letter he received from Pierce & Associates as the initial communication. [59] at 8; *see also* [45] ¶ 26. In the previous sentence of his brief, however, Bozek refers to a 2013 debt validation letter he sent to Pierce & Associates, but he dismisses that letter because his "present claim do[es] not include [the] 2013 letters." [59] at 7; *see also* [45] ¶¶ 22–23. It is not reasonable to infer that Pierce & Associates' initial communication occurred in 2016, after Bozek had already sent them two debt validation letters. Bank of America made the same arguments, and Bozek did not respond. Bozek has not shown that the FDCPA obligated Pierce & Associates or Bank of America to respond to his debt validation letter. Bozek's allegations are also too vague and conclusory to provide adequate notice of the contours of his FDCPA claims against Pierce & Associates and Bank of America.

---

[15] Pierce & Associates also argues that the court may infer from the allegations in the complaint that the complaint was the first communication from them. [16] at 7 (citing *Thomas v. Law Firm of Simpson & Cybak*, 392 F.3d 914, 917 (7th Cir. 2004)). That holding of *Thomas* is no longer good law. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007). Section 1692g(d) explicitly states that "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)."

## E.     FCRA Liability

In Count IV, Bozek alleges that PNC violated 15 U.S.C. §§ 1681i(a)(2), and 1681s-2(b)(1), [45] ¶¶ 105–08; and in Count V, Bozek alleges that Bank of America violated §§ 1681b(f), 1681e, and 1681q, [45] ¶¶ 111–12. PNC and Bank of America each move to dismiss the FCRA claims that Bozek brings against them.

PNC argues that Bozek's FCRA claim must be dismissed because he fails to assert the requisite information to trigger PNC's liability under the statute. [52] at 10 (citing 15 U.S.C. § 1681s-2(b)(1)). Upon receipt of a notice disputing the completeness or accuracy of any information that a person provided to a consumer reporting agency, the FCRA obligates that person to conduct an investigation, to review relevant information, and to report the results of the investigation to the reporting agency. *Id.* § 1681s-2(b)(1). As PNC notes, Bozek does not allege that he sent PNC a letter disputing information that PNC sent to a credit reporting agency. Although Bozek does refer to debt validation letters in the complaint, there is no allegation that those letters discussed or concerned PNC's reporting to credit reporting agencies. Bozek's response brief does not rebut these arguments. Given that no inference can be made that PNC had a duty to investigate or to correct information that it sent to the credit reporting agencies, I conclude that Bozek cannot state an FCRA claim against PNC.

Bank of America argues that Bozek's allegations are "cryptic, vague, and conclusory, such that it is impossible to decipher the legal or factual basis of [the FCRA] claim." [50] at 8. Alternatively, Bank of America argues that Bozek does not

have Article III standing to bring this claim because he does not and cannot allege that the alleged violation proximately caused him actual and specific damages as is required under *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016). [50] at 8–9. Bozek does not address these arguments. Instead, Bozek limits his response to reasserting his allegations and confirming that he "will prove at the trial that [Bank of America] violated [the FCRA] by knowingly and willfully obtain[ing] information on [him] from CRA's." [59] at 12.

Bozek failed to allege sufficient facts to state a claim under §§ 1681b(f), 1681e, and 1681q. There is nothing from which one could infer Bank of America's purpose in using or obtaining the relevant information, and the allegation that Bank of America made an unauthorized credit pull, on its own, is not enough to survive a Rule 12(b)(6) motion. *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016) ("Legal conclusions or bare and conclusory allegations, however, are insufficient to state a claim."). Additionally, the complaint does not plausibly allege a concrete harm caused by Bank of America's credit report activity or an "appreciable risk of harm" to the underlying interest that Congress sought to protect by enacting the FCRA. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017).

As there are no remaining federal claims in this action, I decline to exercise supplemental jurisdiction over Bozek's state-law claims. *See* 28 U.S.C. § 1367; *Mains*, 852 F.3d at 679. Those claims are dismissed without prejudice. Typically, leave to amend should be freely given. *See Runnion ex rel. Runnion v. Girl Scouts of*

*Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015). In this instance, however, amendment would be futile because there are no plausible federal theories of liability against defendants.

## IV. Conclusion

Defendants' motions are granted in part. The complaint is dismissed in its entirety, and the Clerk shall enter judgment terminating the case.

ENTER:

Manish S. Shah
United States District Judge

Date: March 15, 2018